AUBRA SELBY, Plaintiff-Appellee, v. DuQUOIN STATE BANK, Defendant-Appellant.

Fifth District   No. 5—90—0518

Opinion filed December 31, 1991.

Michael F. Dahlen and Paul G. Schoen, both of Feirich/Schoen/Mager/Green, of Carbondale, for appellant.

Jerry B. Smith, of DuQuoin, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Aubra Selby, brought a small claims complaint against defendant, DuQuoin State Bank (hereinafter the Bank), alleging that the Bank converted and improperly set off $2,477.78 in funds deposited to the checking account she held jointly with Norman Smith, now deceased. Plaintiff sought judgment against the Bank in the amount of $2,477.78 plus interest thereon, costs, and attorney fees. Following hearing on plaintiff's complaint on May 9, 1990, the circuit court of Perry County entered judgment in favor of the defendant Bank, basing its judgment upon the supreme court's decision in *Pescetto v. Colonial Trust & Savings Bank* (1986), 111 Ill. 2d 314, 489 N.E.2d 1365. Plaintiff filed a motion to vacate the judgment, which the circuit court granted by order entered July 10, 1990. Thereupon the court entered judgment in favor of plaintiff and against defendant Bank in the amount of $2,477.78, plus costs of $43. It is from the July 10, 1990,

order of the circuit court of Perry County that the Bank brings this appeal.

A report of proceedings was certified by the circuit court pursuant to Supreme Court Rule 323(c) (134 Ill. 2d R. 323(c)). The report of proceedings and the exhibits placed into evidence at the hearing on plaintiff's complaint indicate that the following evidence was before the court in reaching its decision.

On July 26, 1988, plaintiff and the decedent, Norman Smith, opened a joint checking (NOW) account with defendant Bank, by executing a signature card. Both plaintiff and Smith made deposits into and wrote checks upon the account. The signature card, which was placed into evidence, provided that one signature was required for withdrawals from the account and that it was a joint account with survivorship. The signature-card agreement further provided:

> "Each depositor (individually and jointly) hereby acknowledges that this financial institution has the right to charge or set-off against any deposit of the depositor with this financial institution any debts or obligations owing by the depositor to this financial institution whether direct or indirect, secured or unsecured, absolute or contingent, joint or several, due or to become due, whether as maker, endorser, guarantor, or otherwise, now existing or hereafter contracted or acquired by this financial institution and wherever payable, and the interest thereon and expense, if any, which may be incurred by this financial institution in connection therewith, and this agreement shall be construed to be the consent of the depositor to make such a charge or set-off against his/her/their account(s) if consent be required by any present or future statute or law."

The decedent executed a note and security agreement in favor of defendant Bank on August 1, 1989. The proceeds of the loan were used by decedent to purchase a mobile home and lot, and decedent executed a mortgage on real estate owned by decedent in Perry County to further secure the indebtedness. The note and security agreement provided that decedent gave the bank a security interest in "the goods or property being purchased" and "[decedent's] deposit accounts and other rights to payment of money from [the Bank]." The default provisions of the note and security agreement provided, among other events of default, that decedent would be in default if he died.

Norman Smith died on November 10, 1989, and at the time of his death he was not in default for failure to have made any of the loan payments on the August 1, 1989, note and security agreement. On

November 27, 1989, the Bank applied the $2,477.87 balance in the NOW account to the balance owed by decedent on the August 1, 1989, note and security agreement. Plaintiff demanded payment from the Bank of the $2,477.78 prior to filing suit for conversion.

■■ The Bank presents the following issue for our review: whether a bank can enforce its security interest in a joint NOW account to secure payment of a loan that is in default by either (1) charging the account to the satisfaction of the loan pursuant to a pledge or (2) setting off the funds on deposit against the loan, where the surviving joint owner of the NOW account did not sign the combined promissory note and security agreement but did sign the signature-card agreement. The parties agree that there is no factual dispute in the instant case and that the issues involve only contract interpretation. The construction and legal effect of an instrument raise a question of law in the absence of any material question of fact. (*Oldweiler v. Peoples Bank* (1987), 161 Ill. App. 3d 317, 320, 514 N.E.2d 541, 543.) Consequently, since the evidence before the court below was entirely documentary in nature, this court is unrestrained by the trial court's findings and may independently construe the instruments involved. *Oldweiler*, 161 Ill. App. 3d at 320, 514 N.E.2d at 543.

■■ We shall first discuss the issue of whether the Bank was entitled to set off the parties' joint checking account for the debt of one of the owners thereof. The common law right of setoff provides that a Bank may apply its depositor's account for a debt he owes to the bank. (*First National Bank v. Lewis* (1989), 186 Ill. App. 3d 16, 19, 542 N.E.2d 124, 126, citing *Kerner v. Kinsey* (1943), 384 Ill. 180, 51 N.E.2d 126; *International Bank v. Jones* (1887), 119 Ill. 407, 9 N.E. 885; *First National Bank v. Estate of Philp* (1982), 106 Ill. App. 3d 360, 436 N.E.2d 15.) Under common law a bank has the power to apply the deposit to the payment of such depositor's indebtedness only when there are mutual demands and debts between the parties and this right of setoff arises at the time the depositor's indebtedness to the bank has matured. *Bonhiver v. State Bank* (1975), 29 Ill. App. 3d 794, 803-04, 331 N.E.2d 390, 398.

Plaintiff argues that there was neither mutuality of demand and debt nor maturity of debt in the instant case. We note the Bank's assertion in its phrasing of the issue on review that decedent's loan was in default. Plaintiff contends on appeal that the loan was not in default at the time of Smith's death and so under the rules of joint tenancy, the entire interest in the NOW account became vested in her. Plaintiff further contends that the Bank's purported right to set off

the funds does not survive Smith's death because the loan was not in default at the time of his death.

The general rule is that a bank cannot apply the deposit of a debtor to an unmatured indebtedness in the absence of an express authority to do so. (*Bonhiver*, 29 Ill. App. 3d at 804, 331 N.E.2d at 398.) It is similarly recognized that in the absence of statutory authority or a contract to the contrary, the right to set off a debt of a deceased joint tenant against the interest of the surviving joint tenant does not exist. (*Donnelly v. First Mutual Savings Association* (Fla. Dist. Ct. App. 1987), 509 So. 2d 1273, 1274, citing Annot., 68 A.L.R.3d 192, 202 (1976).) Although the maturity date on the August 1, 1989, note and security agreement was July 31, 1992, the note provided that in the event of a default the Bank could elect to accelerate the due date of the note. Because Norman Smith's death was a specified event of default, the Bank had the power to accelerate the indebtedness and thus Smith's loan with the Bank matured on the date of his death along with the Bank's right of setoff.

We agree with plaintiff, however, that there was no apparent mutuality between the debtor on the note and security agreement and the parties entitled under the checking account to demand payment of the funds on deposit with the bank. The relationship between a bank and its depositor is that of debtor and creditor. (*Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 31, 440 N.E.2d 194, 198-99.) When money is deposited with a bank, title to it passes and the bank becomes a debtor to the extent of the deposit and, to that extent, the depositor becomes a creditor. (*Mid-City National Bank v. Mar Building Corp.* (1975), 33 Ill. App. 3d 1083, 1089, 339 N.E.2d 497, 502.) While Norman Smith was the sole debtor on the note and security agreement, it was Norman Smith *and* Aubra Selby who owned the deposit account and were creditors to the Bank to the extent of the amount of moneys deposited in that account.

The Bank argues, however, that the fact that plaintiff did not execute the note and security agreement is irrelevant and there was, in fact, mutuality of obligation between plaintiff and the Bank because of the setoff provision in the signature-card agreement. The express or implied contract between the depositor and the bank controls their relationship. (*Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 391, 385 N.E.2d 63, 66.) The Bank argues that the signature-card agreement should be construed to be a "consent" by each depositor to the setoff of an obligation of either depositor against the entire joint account. The Bank cites an Ohio decision, *Chickerneo v. Society National Bank* (1979), 58 Ohio 2d 315, 390 N.E.2d 1183, for the prop-

osition that a bank can properly set off funds in a jointly owned account for a debt owing by only one of the depositors, despite lack of mutuality, where the depositors' contract with the bank so allows. In *Chickerneo,* the bank had rules and regulations governing bank accounts such as was held by the plaintiff therein and his codepositor, and these regulations were made a part of the contract between the bank and its depositors. One of the regulations provided that any indebtedness owed the bank by a depositor may be charged to an account in the name of such depositor and another. Because the bank's actions were in conformity with the bank regulation and thus lawful under the terms of its contract with the depositors, the court on review upheld the lower court's judgment in favor of the defendant bank, despite proof by plaintiff that he was the sole owner of the funds deposited into the account. *Chickerneo,* 58 Ohio 2d at 320-21, 390 N.E.2d at 1186.

■ In the instant case the signature-card agreement for the NOW account provided that one signature was required for withdrawals and that it was a joint account with survivorship. We also note that under section 2 of the Illinois Joint Tenancy Act:

"when a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, the deposit or any part thereof or any interest or dividend thereon may be paid to any one of those persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made." (Ill. Rev. Stat. 1989, ch. 76, par. 2(a).)

Thus, both Illinois law and the depositors' contract with the Bank imply an intent that each depositor be treated as owner of the entire interest in the account.

Moreover, a plain reading of the setoff provision of the signature-card agreement indicates to this court that the Bank asserted a right to set off each depositor's debts or obligations owing to the Bank against the deposit account and that each depositor recognized this right of the Bank to set off either depositor's debts against the joint account. Therefore, under the reasoning of the *Chickerneo* case, because the joint depositors, Smith and plaintiff, agreed that the Bank's right of setoff applied to the joint account for a debt or obligation owing by either of them, the Bank's setoff of these funds was proper.

Accordingly, we find that the court below erred in determining that the defendant Bank did not have the right to set off the indebtedness owed by Norman Smith from plaintiff's joint NOW account, we reverse the July 10, 1990, order of the circuit court of Perry County, and we enter judgment on plaintiff's complaint in favor of the defendant. Because of our holding that the defendant Bank had the right to set off the funds in the NOW account against the amount due on decedent's loan with the Bank, we need not reach the issue of whether the decedent validly pledged the account by way of the loan documents executed by decedent on August 1, 1989, or whether the signature-card agreement authorized a pledge of the account by one joint tenant under *Pescetto v. Colonial Trust & Savings Bank*.

Reversed; judgment entered.

HARRISON and LEWIS, JJ., concur.