CLIFFORD R. FISHER, Plaintiff-Appellant, v. STATE BANK OF ANNA-WAN, Defendant-Appellee.

Third District   No. 3—92—0846

Opinion filed August 24, 1993.—Modified on denial of rehearing October 22, 1993.

Barash, Stoerzbach & Henson, of Galesburg (John W. Robertson, of counsel), for appellant.

William E. Stewart, of Kewanee, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff Clifford R. Fisher (Fisher) held certificates of deposit (CDs) in joint tenancy with his sons, Robert and Harold, at the defendant State Bank of Annawan (Bank). Robert was personally indebted to the Bank. When he filed bankruptcy, the bank set off Robert's personal indebtedness against the CDs. Fisher filed this action alleging conversion of funds and seeking reformation of the CDs and the Bank's signature card. Following a bench trial, judgment was entered in favor of the Bank. We reverse and remand this cause for the calculation of damages.

Fisher is a retired farmer who has done business with the State Bank of Annawan since 1932. For many years, he owned CDs which, upon maturity, he would renew. In 1979, Fisher added his sons' names to the CDs, as joint tenants. In 1990, Fisher owned five CDs at the Bank, in joint tenancy with his sons, Robert and Harold. Robert was indebted to the Bank personally for a number of farm loans. He filed bankruptcy on August 28, 1990. The Bank then set off $61,845.97 of Robert Fisher's personal indebtedness against the five joint CDs. All of the CDs were issued pursuant to a Bank signature card. The CDs contained no reference to any right of setoff, and the signature card contained no such reference. Neither Robert nor Clifford Fisher ever pledged any of the CDs to the Bank as security for Robert's debt.

The only mention of setoff was on the loan documents signed by Robert. From 1986 through 1989, he signed 18 notes that included a setoff clause, which provided, in pertinent part, that the Bank could:

> "before or after Default exercise its right to set-off all or any portion of the indebtedness evidenced hereby against any liability or indebtedness of the Lender to the Borrower (whether owned by the Borrower alone or in conjunction with any other person or entity, provided that it's Borrower has a beneficial interest therein) without prior notice to the Borrower. This right applied to and includes but is not limited to any funds on deposit with the Lender, provisionally, in escrow (subject to the terms of any special agreement therefore) for collection, or in any time or open accounts ***."

On September 21, 1990, Fisher filed this suit alleging conversion of the funds and, in the alternative, reformation of the CDs and the signature card. After hearing the evidence and the arguments of counsel, the trial judge entered judgment in favor of the Bank.

On appeal, Fisher first argues that the doctrine of "mutuality" should be extended to joint accounts, and that the Bank's setoff against the CDs was wrongful because there was no mutuality between the CDs and Robert's individual indebtedness. He asserts that the Bank's right to set off is not absolute. We agree.

The general rule in Illinois is that a bank may set off a depositor's account for a debt. However, "The application of the deposit, which is called a setoff, is only proper when the debts are mutual between the parties." (*First National Bank v. Lewis* (1989), 186 Ill. App. 3d 16, 19, 542 N.E.2d 124.) Our supreme court has long held the partnership accounts cannot be set off against the debt of one partner on the basis of mutuality.

> "[A] bank has a right of set-off, as against a deposit, only when the individual who is both depositor and debtor, stands, in both these characters alike, in precisely the same relation, and on precisely the same footing, towards the bank, and hence an individual deposit can not be set-off against a partnership debt." *International Bank v. Jones* (1887), 119 Ill. 407, 410, 9 N.E.2d 885.

The right of setoff is not without limit. "[W]hen a bank has either actual or constructive notice that a beneficial ownership of an account lies outside the legal title, the bank may not deal with the account's contractual owner to the detriment of the equitable owner." (*In re Estate of Muhammad* (1984), 123 Ill. App. 3d 756, 759, 463 N.E.2d 732.) Furthermore, knowledge that a depositor's business customarily requires the handling of funds in which others have an interest, together with cognizance of circumstances which tend to individualize a deposit or line of deposits, may constitute notice of facts sufficient to put the bank upon inquiry as to the true nature of the deposit. *Gluth Brothers Construction, Inc. v. Union National Bank* (1988), 166 Ill. App. 3d 18, 23, 518 N.E.2d 1345.

A bank's right of setoff is not coextensive with its right to recover. (*Faber, Coe & Gregg, Inc. v. First National Bank* (1969), 107 Ill. App. 2d 204, 208, 246 N.E.2d 96.) For example, "a bank is not entitled to exercise its right of setoff against an individual partner's deposit for a partnership debt." *First National Bank*, 186 Ill. App. 3d at 21.

■ Applying the foregoing authority to this case, we conclude that the Bank's setoff was improper since there was no mutuality between the parties. In his capacity as depositor and debtor, Robert did not stand in precisely the same relation and on precisely the same footing towards the Bank. Robert signed his notes in an individual capacity, while he held the CDs jointly with his father and brother. Similarly, while Clifford Fisher stood as a joint depositor on the five CDs, he was not a debtor toward the Bank, much less a debtor "in precisely the same relation, and on precisely the same footing." *International Bank*, 119 Ill. at 410.

Notwithstanding the foregoing authority, the Bank relies on *Pescetto v. Colonial Trust & Savings Bank* (1986), 111 Ill. 2d 314, 489 N.E.2d 1365, *Selby v. DuQuoin State Bank* (1991), 223 Ill. App. 3d 104, 584 N.E.2d 1055, and *Pacenta v. American Savings Bank* (1990), 195 Ill. App. 3d 808, 552 N.E.2d 1276. We find both these cases to be distinguishable and inapplicable to this case. In *Pescetto*, the individual borrower explicitly pledged a joint savings account as collateral for a loan, which the bank properly claimed as security after default. (*Pescetto*, 111 Ill. 2d at 315-16.) In the instant case, Robert gave the Bank no security interest in the CDs. In fact, the Bank's vice-president testified that the decisions the Bank made in terms of loaning money to Robert were not in any way affected by the CDs. Thus, unlike *Pescetto*, this case does not involve the pledging of collateral.

■ Next, the Bank asserts that *Selby v. DuQuoin State Bank* indicates that the fifth district has a different view of mutuality than we do. On the contrary, we believe the analysis in *Selby* is absolutely correct based on the facts in that case. The common law right of setoff may be applied when there are mutual demands and debts between the parties. (See *Selby*, 223 Ill. App. 3d at 107.) In *Selby*, both depositors to the joint account signed a signature card which contained a setoff provision. (*Selby*, 223 Ill. App. 3d at 106, 109.) In this case, no such contractual relationship existed; neither the CDs nor the signature card contained any reference to the right of setoff.

Also, as noted above, the rights of the parties may be affected if the Bank has notice of equitable ownership of the funds or the existence of circumstances which tend to individualize a deposit or line of deposits. In *Selby*, both holders of the account made deposits and withdrawals. (*Selby*, 223 Ill. App. 3d at 106.) In this case, however, it was beyond dispute that the money in the CDs belonged to, and was under the exclusive control of, Clifford Fisher.

The Bank's reliance upon *Pacenta v. American Savings Bank* is also misplaced. First, *Pacenta* is factually distinguishable. Indeed, the

situation is the opposite of that presented here. Plaintiff and her husband held a joint checking account at the bank, which became overdrawn by $3,436.65. The bank then cashed in Pacenta's personal certificate of deposit, set off $3,436.25 against the debt, and sent a check for the balance to plaintiff. Thus, in *Pacenta*, individual assets were applied to joint tenancy debt. There was no danger of the misapplication of a nondebtor's assets to another party's debt. Second, *Pacenta* was decided under the Uniform Commercial Code, which was not argued or litigated here and does not apply to these facts. Mutuality was not an issue in *Pacenta*.

We hold that the doctrine of mutuality applies to joint accounts in the same manner as it applies to partnership accounts. The Bank's set-off of the joint CDs was improper because of a lack of mutuality. Other States have agreed that the principle of mutuality applies to joint accounts. (See *Greenwood v. Bank of Illmo* (Mo. App. 1989), 782 S.W.2d 783 (setoff provision applies only to parties who signed provision); *City National Bank v. American Surety Co.* (Tex. App. 1932), 52 S.W.2d 259 (setoff denied due to no mutuality with joint account); *Atkinson v. Federal Deposit Insurance Corp.* (5th Cir. 1981), 642 F.2d 145 (interpreting Alabama law).) In light of our holding that mutuality applies in this case, we need not reach the issues raised by appellant concerning reformation of the documents.

Next, we address Fisher's argument that he is entitled to prejudgment interest and attorney fees. Wrongful appropriation by a bank of a customer's funds makes the bank liable for prejudgment interest on those funds. (See *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 473 N.E.2d 588.) In this case, the plaintiff has suggested three methods for calculating the amount of interest due after the maturity date on the CDs. The first method would simply extend the interest rate established by the then existing CDs beyond their expiration dates. The second method would calculate prejudgment interest on the basis of the prevailing rate at the time that each certificate reached maturity and, presumably, would have been renewed. The final method proposed by the parties would calculate interest based upon section 2 of the Interest Act (815 ILCS 205/2 (West 1992)).

■ In its brief, the defendant Bank asserts that if interest is awarded to Fisher, it should be calculated according to the schedule of interest rates on CDs which would have been paid in the event of renewal. Under the factual circumstances presented in this case, we agree. Fisher has a 20-year history of renewing his CDs. Both parties agree it is very likely he would have renewed them if the Bank had not acted. Fisher testified that the renewal of his CDs was "auto-

matic." Upon remand, the circuit court should calculate the prejudgment interest according to the prevailing renewal rates.

■ Finally, Fisher asserts that he is entitled to attorney fees as part of punitive damages for conversion. "A trial court may properly consider as one element of punitive damages the amount of plaintiff's attorney fees. [Citation.] Attorney's fees cannot be awarded as a separate entity distinct from punitive damages." (*Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 683, 381 N.E.2d 821.) In conversion cases, the awarding of punitive damages is dependent upon a showing of express malice or an actual intent to injure the plaintiff or others. (See *Rauwolf v. Travelers Indemnity Co.* (1974), 20 Ill. App. 3d 226, 228-29, 313 N.E.2d 504.) After reviewing the record in this case, we conclude that Fisher has not made a sufficient showing to merit the awarding of attorney fees.

For the foregoing reasons, the decision of the circuit court of Henry County is reversed, and this cause is remanded for the calculation of damages in the manner prescribed in this opinion.

Affirmed in part; reversed in part and remanded.

BRESLIN and STOUDER, JJ., concur.