(No. 76483.—

CLIFFORD FISHER, Appellee and Cross-Appellant,
v. THE STATE BANK OF ANNAWAN, Appellant
and Cross-Appellee.

*Opinion filed October 20, 1994.—Rehearing denied
December 5, 1994.*

BILANDIC, C.J., dissenting.

William E. Stewart, of Kewanee, for appellant.

Barry M. Barash, Carl Hawkinson, John W. Robertson and Pamela S. Wilcox, of Barash & Stoerzbach, of Galesburg, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiff filed this action in the circuit court of Henry County against defendant, the State Bank of Annawan, for conversion of funds and reformation of contract. Defendant had set off plaintiff's son's debt to the bank

against certificates of deposit (CDs) held jointly by plaintiff and his two sons. The trial court ruled in favor of defendant, but the appellate court reversed and remanded. (251 Ill. App. 3d 845.) We granted defendant leave to appeal (145 Ill. 2d R. 315) and reverse.

## FACTS

Plaintiff owned five CDs which were on deposit at defendant bank. In 1979, plaintiff added his two sons' names to these CDs so that the accounts were held jointly by "Clifford Fisher or Robert D. Fisher or Harold Dean Fisher." The five CDs were issued pursuant to a bank signature card which was signed by plaintiff and his two sons. The CDs themselves provided:

> "If more than one depositor is named above, and unless specifically indicated therein to the contrary, this certificate and the deposit evidenced hereby, shall belong to said depositors as joint tenants with right of survivorship (and not as tenants in common); provided, however, for all purposes, including endorsement, payment of principal and interest, presentation, transfer, and any notice to or from the depositors, this institution may deem and treat as the absolute owner hereof any one depositor named above, or the survivor or survivors, and each such depositor shall be the agent of each other depositor for all the foregoing purposes."

Plaintiff signed each certificate.

Robert was personally indebted to defendant bank for a number of farm loans he had obtained from June 27, 1986, through October 31, 1989. The loan documents Robert signed all contained a provision for setoff similar to the following:

> "SET-OFF: Lender may, at any time before or after Default exercise its right to set-off all or any portion of the indebtedness of the Lender to the Borrower (whether owned by the Borrower alone or in conjunction with any other person or entity, provided that the Borrower has a beneficial interest therein) without prior notice to the Borrower. This right applies to and includes but is not

limited to any funds on deposit with the Lender, provisionally, in escrow (subject to the terms of any special agreement therefore) for collection, or in any time or open accounts."

Robert filed for bankruptcy on August 28, 1990, and defendant bank that same day set off $61,845.97 of Robert's personal debt against the five joint CDs.

Plaintiff filed suit alleging, *inter alia*, conversion of funds and reformation of the CDs and the signature card. After a bench trial, the circuit court held for defendant. The appellate court reversed, finding no right of setoff because no mutuality of debts existed between the debt Robert owed to the defendant bank and the money the defendant bank held for the depositors in the CD accounts. The appellate court further noted that: (1) Robert gave no security interest in the CDs; (2) no contractual basis existed because neither the signature card nor the CDs contained any reference to the right of setoff; and (3) that the money in the CDs belonged to, and was under the exclusive control of, plaintiff.

On appeal, defendant bank argues that the appellate court erred in denying a setoff. Plaintiff cross-appeals and argues that the trial court erred in denying reformation of the signature card and Robert's loan agreements with defendant bank.

## ANALYSIS

### I

We find the issue of setoff to be controlled by several decisions of this court. In *Pescetto v. Colonial Trust & Savings Bank* (1986), 111 Ill. 2d 314, this court held:

> "A joint bank account is not the same as a joint tenancy in real property, and is subject to the provisions of the contract between the bank and its depositors. [Citation.]" (*Pescetto*, 111 Ill. 2d at 317.)

And, in *Suburban Bank v. Bousis* (1991), 144 Ill. 2d 51, this court stated:

"A bank-depositor/debtor-creditor relationship arises from and is regulated by contract, rather than by the ownership of the funds. [Citation.]" *Suburban Bank*, 144 Ill. 2d at 62.

Plaintiff's CD accounts with defendant bank were held jointly with his sons. By their very nature then, the CDs belonged to each name on the account in full. (See 765 ILCS 1005/2(a) (West 1992).) The contract between plaintiff and the defendant bank was integrated, involving the CDs and a signature card. Plaintiff's CDs provided that the defendant bank could treat each depositor on the CDs as the absolute owner and that each depositor shall be the agent of each other for all purposes relating to the CDs. Robert's name was on the CD accounts and his signature was on the signature card. As such, both plaintiff and Robert, as well as Harold, agreed that Robert could be treated by the defendant bank as the absolute owner of the CDs, and that he was the agent of the others in regard to the CDs. Thus, the defendant bank could treat Robert as owning the CDs and Robert could grant the defendant bank the right of setoff in his loan agreements. The defendant bank had the contractual right to set off the amount Robert owed for the farm loans against the CDs.

Plaintiff argues, however, and the appellate court found, that the bank could not set off Robert's indebtedness against the CDs because no mutuality existed. However, this inquiry into equitable setoff is irrelevant where a contractual basis for a setoff exists. The contract between plaintiff, his sons, and the defendant bank provides an independent basis for a setoff. (See *Selby v. DuQuoin State Bank* (1991), 223 Ill. App. 3d 104 (no mutuality for equitable setoff but bank contract provided for setoff).) The appellate court also found a setoff improper because the CDs themselves did not explicitly provide for a setoff. However, it is sufficient that the CDs allowed the defendant bank to treat any name on

the accounts as the sole owner and agent of that account.

We further note that while Robert did not pledge the CDs as security for the loan, the issue here is whether Robert gave the bank the right to set off his debts against his joint account. He did. Further, we note it does not matter, as the appellate court found, that the money in the CDs belonged to and was under the exclusive control of plaintiff. What is relevant here is the contractual relationship between plaintiff and the defendant bank, not the ownership of the funds. See *Suburban Bank*, 144 Ill. 2d at 62.

## II

Plaintiff also argues that the trial court erred in refusing to reform (1) Robert's loan agreements with the defendant bank and (2) the signature card. The appellate court did not address this issue, as it reversed on the mutuality issue.

In *Suburban Bank*, this court noted:

> " 'An action to reform a written agreement rests upon a theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, or through mistake of one side and fraud on the other, some provision agreed upon was omitted, and the action is to so change the instrument as written as to conform it to the contract agreed upon, by inserting the provisions omitted or striking out the one inserted by mutual mistake.' (*Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 28.)" (*Suburban Bank*, 144 Ill. 2d at 58.)

The party wishing to reform a contract must show mutual mistake by clear and convincing evidence, and a trial court's decision on the matter will not be disturbed unless it is against the manifest weight of the evidence. *Suburban Bank*, 144 Ill. 2d at 58-59, 63-64.

Plaintiff first argues that Robert's contract with the defendant bank should be reformed to omit the language concerning a setoff. Plaintiff argues that the evidence

showed that at the time of the formation of the contracts, neither the defendant bank nor Robert intended that the money borrowed be secured by the CDs. However, plaintiff does not argue that Robert and defendant bank did not intend for the bank to have a right to a *setoff* in any account in which Robert had an interest or that Robert did not intend such a result and the bank committed fraud. In fact, the loan agreements Robert signed specifically noted that the right to a setoff was separate from providing security for the loan. Moreover, the fact that Robert signed 18 loan agreements over several years, each of which contained a setoff provision, would rebut a claim that no right to a setoff was intended. The trial court found that plaintiff had not met his burden by clear and convincing evidence. This finding was not against the manifest weight of the evidence.

Plaintiff also argues that the trial court erred in refusing to reform the signature card to reflect pay-on-death accounts rather than joint accounts for the CDs. Plaintiff argues: (1) the only witness who had any recollection of signing the signature card was plaintiff, who testified that he told Evelyn Richter, the employee who set up the account, that he wanted the money to go to his sons after he died; (2) plaintiff's intention to set up a pay-on-death account was consistent with other pay-on-death accounts he had set up at other financial institutions; (3) plaintiff treated the money in the CDs as his sole property; (4) plaintiff's intention to divide his CDs between his sons was consistent with his estate plan; (5) neither son exercised control over the CDs, only plaintiff exercised such control; and (6) the defendant bank treated the CDs solely as plaintiff's property by reporting interest on the accounts under plaintiff's social security number, mailing communications regarding the CDs to plaintiff's home, and asking Robert to have plaintiff provide security for the loans.

However, the trial court found that plaintiff has not proven the right to reform the signature card by clear and convincing evidence. This finding was also not against the manifest weight of the evidence. As the defendant bank notes, plaintiff first created a joint account with one of his sons in 1956. A joint signature card was signed by plaintiff and Robert in 1971, and another with Harold that same day. Joint CDs were issued under these signature cards between 1971 and 1978. Thus, plaintiff had experience with joint accounts in the past. The joint tenancy card at issue here was signed in 1979 and the five CDs were subsequently issued under that signature card in the names of plaintiff and his two sons. In 1980, plaintiff and his sons signed a signature card for a joint tenancy savings account. Interest checks sent and cashed by plaintiff were payable to plaintiff and his sons. Defendant bank also notes that Evelyn Richter, who set up the account, testified that she knew the difference between joint accounts and pay-on-death accounts. Finally, the fact that defendant bank treated plaintiff as the sole owner of the CDs is insignificant here, as the bank treated all joint accounts in this manner unless otherwise directed by the owners.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

CHIEF JUSTICE BILANDIC, dissenting:

I respectfully dissent from the majority's conclusion that the defendant bank had the contractual right to set off Robert's individual debt against the CDs, which were jointly held by the plaintiff and his two sons. I also disagree with the majority's conclusion that inquiry into

the doctrine of mutuality is irrelevant. I would hold for the reasons discussed below that the bank had no contractual right to set off Robert's individual debt against the jointly held CDs. Because there was no contractual right to a setoff, a setoff would be permitted only if the doctrine of mutuality is satisfied. That doctrine is not met here.

While I agree with the majority's conclusion that there was a contract between the plaintiff and the bank, I disagree with its conclusion that this contract provided for a setoff. The only evidence that the majority cites in support of its conclusion that the contract between the bank and the plaintiff provided for a setoff is language in the CDs that provides that the bank could treat any person named on the CDs as the absolute owner. The majority apparently finds that this language, standing alone, creates a contractual basis for a setoff. The majority cites *Selby v. DuQuoin State Bank* (1991), 223 Ill. App. 3d 104, as support for this conclusion. The majority's reliance upon *Selby* is misplaced. In *Selby*, the court allowed a bank to set off from a joint checking account the debt of one of the depositors. The facts in *Selby*, however, are distinguishable from the instant case. In *Selby*, the signature card agreement for the joint account disclosed the bank's right to set off either depositors' debts against the joint account. (*Selby*, 223 Ill. App. 3d at 109.) In the instant case, on the other hand, neither the signature card nor the CDs provide for the bank's right to a setoff. Therefore, the contract between the plaintiff and the bank does not sufficiently provide for a setoff.

The majority also improperly concludes that inquiry into the doctrine of mutuality is irrelevant. In the absence of a contractual basis for a setoff, mutuality is essential to the validity of a setoff. (*International Bank v. Jones* (1887), 119 Ill. 407.) As this court has previously stated:

"[A] bank has a right of set-off, as against a deposit, only when the individual who is both depositor and debtor, stands, in both these characters alike, in precisely the same relation, and on precisely the same footing, towards the bank \*\*\*." (*International*, 119 Ill. at 410.)

In *International*, this court held that an individual deposit cannot be set off against a partnership debt because of a lack of mutuality. (*International Bank v. Jones* (1887), 119 Ill. 407.) The court's reasoning with respect to the doctrine of mutuality applies equally in the context of joint accounts. Here, the bank's setoff of the joint CDs was improper because of a lack of mutuality between the parties. Although Robert signed his notes in an individual capacity, he held the CDs jointly with his father and brother. Additionally, while the plaintiff stood as a joint depositor on the CDs, he was not indebted to the bank. Therefore, the bank's setoff of the CDs was improper because of a lack of mutuality.

For the reasons stated, the bank had no right to set off the amount Robert owed for the farm loans against the jointly held CDs. Accordingly, I dissent from the majority's decision.