ROBERT L. LEONARD, Plaintiff-Appellant, v. LEONARD W. KOVAL *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—88—1213

Opinion filed August 25, 1989.

Gordon & Gordon, Ltd., of Chicago, for appellant.

Deutsch, Levy & Engel, Chartered, of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:
Plaintiff Robert L. Leonard, the seller of a warehouse in North-

brook, Illinois, filed a two-count complaint against defendants Leonard W. Koval, the buyer, Chicago Title and Trust Company, which held the escrow account, and Florrie Gottainer, a realtor, for specified performance and other relief. After plaintiff rested his case in this bench trial, the trial court directed a verdict in favor of defendants as to count II. Leonard appeals from the directed verdict as to count II for specific performance and declaratory relief concerning the $55,000 escrow. At the close of defendant's case, the trial court directed a verdict in favor of Leonard as to count I, and defendants have not appealed that order. Only the appellee Koval has filed an appearance and answering brief in this court.

On January 21, 1985, Leonard entered into a real estate contract with Koval for the purchase of a 60-year-old airplane hangar which had been converted into a commercial structure, for the purchase price of $865,000. On August 7, 1985, the parties also entered into an escrow agreement, which provided that Koval would, for nine months, use his best efforts to seek a revision to Article V of the Northbrook Zoning Ordinance in order to permit him to add 29,000 square feet or less to the building. Leonard would then have an additional nine months to seek such a zoning revision in the event that Koval failed to succeed.

During the 18-month period, $55,000 was to be held in escrow by Chicago Title and Trust. If the zoning revisions were obtained, $44,000 was to be paid to Leonard and $11,000 was to be paid to a real estate broker. If the zoning change was not accomplished after Koval's best efforts, the money was to be given to Koval. The agreement read:

> "VI. The parties have agreed to retain $55,000 as escrow funds for the next eighteen months during the time the revising of Article V of the Northbrook Zoning Ordinance as aforestated will be pursued; that for the first nine months of said period, the purchaser [defendant] and his attorney shall use their best efforts and at their expense to secure the contemplated revision of Article V of the Northbrook Zoning Ordinance as heretofore stated and permission to add twenty-nine thousand square feet of building or such lesser square footage as Koval [defendant-buyer] accepts; that after said nine month period, the seller [plaintiff], upon notice by purchaser [defendant] that the revision has not yet been accomplished, shall use his [plaintiff-seller's] best efforts so as to accomplish the revision of Article V of the Northbrook Zoning Ordinance as before stated."

Koval filed for a 32,774-square-foot variance with the Northbrook Zoning Board of Appeals (ZBA). He subsequently reduced the request to 31,000 square feet. Koval's application for variance was filed on

September 27, 1985.

The October 28, 1985, minutes of the ZBA show that Grant Erickson, Koval's attorney, appeared with Joseph Alexander, an architect, who presented site plans. After some discussion, with various recommendations and suggestions made to Koval, the matter was continued until November 25, 1985.

On November 19, 1985, Leonard notified Koval that he was in the wrong forum, since the ZBA had no authority to revise Article V of the Northbrook Zoning Ordinance. The letter included a demand to proceed "up and until April 15, 1986, so as to obtain this variation by ordinance," at which time Leonard would "use the following 9 month period of time to accomplish said variation." The parties then contacted Northbrook's attorney, Steven Elrod, to determine the proper forum. Based on the information received from Elrod, the parties included the disputed language in section V of the escrow agreement.

On November 25, 1985, Koval appeared before the Northbrook ZBA. He requested a continuance due to his "inability to complete the items addressed at the November meeting." The chairman announced that if Koval could not proceed on January 27, 1986, the petition would be dismissed and he could refile for a hearing at a later date.

In January 1986, Koval made an application to the Northbrook plan commission for an ordinance amendment.

On January 27, 1986, the ZBA minutes reflect that Koval was still not ready to make a presentation in response to the suggestions and requests made at the November meeting, and he asked for a continuance until April. The chairman stated emphatically that he did not want Koval to work one board, such as the plan commission or village board, against the ZBA. Koval's attorney assured the ZBA that he did "not intend to approach the boards in opposite directions." He further stated that the project is an expensive and complicated development which required further detailed study. The matter was continued until February 24, 1986.

In January 1986, Leonard told Koval that he could add 29,000 square feet to the second floor without obtaining a zoning change, but Koval replied that he wanted the addition to be a one-store facility.

On February 14, 1986, Koval entered into an exclusive real estate agency agreement with Gottainer to sell the property.

On February 24, 1986, no one appeared at the ZBA on behalf of Koval and the matter was again continued.

On March 18, 1986, Koval's attorney appeared before the plan commission and explained that Koval had "struggled as to which direction to pursue," the commission or the ZBA. She stated Koval did not

agree with specific engineering changes suggested by the village, and therefore he went to the ZBA; that she was aware of the lack of cooperation on the part of her client; and that she was not in favor of changing the zoning ordinance since the building was purchased knowing of the non-conforming bulk. When asked why Koval believed the plan commission was a better forum, his attorney replied that it was easier. Elrod stated that he was not sure the ZBA had been presented with sufficient evidence to merit a variation. The plan commission recommended that the village board deny the application "due to insufficient evidence that the amendment would promote public health, safety and welfare."

According to the March 24, 1986, minutes of the ZBA, Koval's attorney stated that Koval had presented to the plan commission an amendment to the zoning code, and that the petition was heard and rejected by the plan commission on March 18. The plan commission had recommended the adoption of a zoning code amendment which would prohibit the ZBA from granting variations to increase the floor area of nonconforming commercial property, which proposed amendment was before the village board of trustees. A request for a continuance until April 28 was granted.

On March 28, 1986, a potential purchaser of the property signed a letter of intent to offer Koval $850,000 for the property, subject to title inspection and procurement of authority to conduct its business there.

On April 2, 1986, Koval notified Leonard in writing that he would not proceed with an appeal to the board.

On April 7, 1986, Leonard informed Koval in writing that he believed Koval did not use his best efforts to obtain the zoning amendment, and thus Leonard felt it would be futile to use his best effort to obtain a zoning amendment, and that he believed Koval had materially breached the contract.

The April 28, 1986, minutes of the ZBA discussed the numerous continuances Koval had received; the fact that he still was unprepared to offer testimony; that no testimony had ever been presented regarding the nature of the requisite hardship; and that in the chairman's opinion Koval had "not made any effort to comply with or respond to the Board's suggestions." The petition for a variance was denied.

On May 27, 1986, Koval entered into a real estate contract to sell the property.

At trial, defendant Florrie Gottainer, a real estate broker for Koval, testified regarding the sale of the property in May 1986.

John Novinson, the assistant village manager for Northbrook, testified that Koval's application to the plan commission was deficient in

several respects: It did not have the owner's name and signature; the property's location; the real estate index number; the parcel's size; the current zoning; the proposed zoning; the structure's height; and the number of lots. However, the application would not be deficient if the party only sought to change an ordinance without reference to one particular piece of property. Novinson testified that the April 28 ZBA minutes were authentic.

Novinson testified further that he was not aware of the precise facts concerning the petition at issue. He did not know if the numerous requests for continuances negatively affected the final decision of the ZBA. Novinson testified that typically applications for zoning amendments included a substantial number of expert witnesses regarding the best use of the land. Typical witnesses included experts from financial institutions, land planners, architects, traffic consultants, tax impact consultant and engineers. However, experts were less likely to be used where a general ordinance amendment was sought.

Jerry Schain, an attorney, testified for Leonard as an expert in zoning. After reviewing the real estate contract and escrow agreement at issue, he testified that the only way to revise an article of the Northbrook Zoning Ordinance was to seek a public hearing before the plan commission and then go to the board of trustees. The ZBA did not have the authority to make such a revision. The two forums, however, were not mutually exclusive. In Schain's opinion, going before the ZBA did not constitute an earnest effort to amend or revise the ordinance.

Schain testified that the appropriate expert witnesses to be called at such a hearing would include an urban planner, an appraiser, and perhaps a traffic consultant. Moreover, after denial by the plan commission, an "earnest effort" would require an appeal to the board of trustees. Whether evidence which was not offered before the plan commission could be offered later to the board of trustees was within the discretion of the board.

Grant Erickson, the attorney representing Koval in the matter at issue, was called as an adverse witness by Leonard. Erickson testified that he requested an addition of 31,000 square feet instead of 29,000 square feet because he wanted to leave room for negotiation. Erickson believed the nine-month time restriction terminated on April 15 (instead of May 7), and therefore, he did not appeal the decision of the plan commission to the board of trustees. At the April 28 meeting of the ZBA he tried everything possible to get the 29,000 additional square feet.

Koval testified as an adverse witness for Leonard that he pur-

chases real estate for his own portfolio. He attended only the first meeting of the ZBA and never appeared before the plan commission.

Leonard testified that he did not know whether a nonconforming building could be added onto by means of a second and third floor. He received no notice of any of the hearings.

Sheldon Harris, the attorney who represented Leonard in the matter at issue, testified that in November 1985 he discovered that Koval was appearing before the wrong forum, and he notified Koval of this error on November 19. He informed Erickson that the burden of proof before the ZBA would be insurmountable. Harris testified further that on March 28, 1986, Erickson told him that Koval was planning on selling and did not have much interest in pursuing the zoning change.

Harris chose not to proceed before the ZBA or the plan commission because of Koval's sale of the property; because he believed he had no standing to seek the zoning change; and because he believed he lacked privity since the property was being sold to another person.

At the close of plaintiff's evidence, the trial court entered a directed verdict in favor of defendants as to count II. The trial court subsequently denied Leonard's motion to reconsider, and he appeals.

■ The trial court must carefully scrutinize the evidence submitted by plaintiff when considering a motion for a directed verdict following the close of plaintiff's case in chief. (*McMillen v. Carlinville Area Hospital* (1983), 114 Ill. App. 3d 732, 450 N.E.2d 5.) In a bench trial, when defendant moves for a directed verdict at the close of plaintiff's case, the court must weigh the evidence, consider the credibility of the witnesses, and the weight and quality of the evidence. (Ill. Rev. Stat. 1987, ch. 110, par. 2–1110.) Thus, rather than considering the evidence in the light most favorable to plaintiff, as in a jury case, the court in a trial without a jury must weigh all of the evidence. (*Kellman v. Arthur Rubloff & Co.* (1979), 68 Ill. App. 3d 799, 386 N.E.2d 502.) The court must first determine as a matter of law whether plaintiff made out a *prima facie* case. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.) That is, the plaintiff must have presented at least some evidence on each element essential to his cause of action. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43; *Wilbur v. Potpora* (1984), 123 Ill. App. 3d 166, 462 N.E.2d 734.

■ In the present case, Leonard presented *prima facie* evidence of a breach of contract. He offered some evidence of breach, supporting his claimed entitlement to specific performance and declaratory relief.

On August 7, 1985, the escrow agreement was executed by the parties, and Koval then had nine months to use his best efforts to seek

a revision of article V of the Northbrook zoning ordinance to obtain permission to add 29,000 square feet to the building in question.

Koval, however, sought 32,774 square feet, when he agreed to seek only 29,000 or such "lesser square footage" as he accepts. It is impossible to tell from this record whether the addition of several thousand extra square feet affected the final decision of Northbrook, but it tends to indicate less than best efforts to obtain the required zoning amendment.

Leonard also presented the testimony of Schain, qualified as an expert in zoning by the trial court, that Koval presented his application before the wrong board. Schain stated the ZBA had no authority to make the zoning change specified in the escrow agreement.

Koval finally filed an application with the plan commission in late January 1986. However, he failed to present the type of evidence which Schain and Novinson indicated ordinarily was necessary in seeking a zoning amendment. While the trial court is not required to accept that testimony, it was enough to establish a *prima facie* case of failure to use best efforts to accomplish the required zoning change. The absence of such expert witnesses carried an inference of the failure to exert best efforts because at the same time, the property was put up for sale without any conditions even vaguely resembling those which required Koval to seek the zoning amendment.

Koval admits deciding to sell the property before the nine-month period had passed. He listed the property on February 14, 1986, and the new purchaser executed a letter of intent to purchase on March 28, 1986. The formal contract of sale was executed on May 27 without any zoning restrictions. While there is no prohibition against such a sale in the contract, the action tends to show a lack of best efforts to obtain the zoning change.

Even after the plan commission recommended a denial of the application to the board of trustees, Koval failed to make an attempt to appeal to the board of trustees. Confusion as to the expiration of the nine-month period does not compel us to find a lack of a *prima facie* case.

Finally, Leonard offered evidence that any efforts on his part to seek the ordinance during the second nine-month period would have been futile. First, he would be appealing to the board on the basis of allegedly inadequate evidence presented by Koval to the plan commission, thus greatly reducing Leonard's chances before that tribunal. And significantly, by the time the second nine-month period rolled around, Koval had sold the property.

By our holding, we in no way intend to foretell the result of the

case upon remand, following a full trial. We limit our holding to the facts in the procedural setting before us. As a matter of law, Leonard presented some evidence on each element essential to his breach of contract cause of action, and therefore, successfully made out a *prima facie* case sufficient to withstand a motion for a directed verdict at the close of his case in chief.

█ Koval maintains that there was an anticipatory breach when Leonard wrote that he would not spend the second nine-month period seeking the zoning change. A party cannot claim the failure of a condition when that party prevented the actualization of the condition upon which the contractual liability depends. (*Osten v. Shah* (1982), 104 Ill. App. 3d 784, 433 N.E.2d 294.) Here, Leonard offered evidence that Koval's failure to use his best efforts to obtain the zoning amendment prejudiced any chance of appeal to the Board.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the views contained herein.

Reversed and remanded.

QUINLAN and LaPORTA, JJ., concur.