MATHIAS G. KLEMP *et al.*, Plaintiffs-Appellants, v. HERGOTT GROUP, INC., d/b/a Castlewood Development Company, *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—93—0833, 1—93—3058 cons.

Opinion filed October 14, 1994.

Gary A. Weintraub, of Chicago, for appellants.

Cohen, Cohen & Salk, P.C., of Deerfield (Bruce A. Salk and David J. Seery, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs, Mathias G. Klemp and Mary Jane Klemp, filed an action against defendants, Hergott Group, Inc., d/b/a Castlewood Development Company, and Washington National Development Company, to obtain a declaratory judgment determining that defendants are required to either (1) file and prosecute an action in court seeking a change in the zoning classification of property conveyed by a "real estate contract" from R-3 to R-4, or (2) authorize plaintiffs to file and prosecute such an action. Plaintiffs also sought a judgment against defendants on a note in the amount of $500,000 for breach of contract. Previously, defendants had filed an application with the Village of Highland Park to rezone the subject property from R-3 to R-4 under the village's zoning ordinance which the city

council of Highland Park denied. In court, plaintiffs sought to prove that, pursuant to the parties' real estate contract, defendants were required to appeal the city council of Highland Park's decision to deny their zoning request. The trial court denied plaintiffs' motion for partial summary judgment and then, at trial, entered an order granting defendants' motion for a directed finding in defendants' favor on all of plaintiffs' claims. On appeal, plaintiffs contend that the trial court erred in: (1) denying their motion for partial summary judgment; and (2) entering a directed finding in favor of the defendants.

We affirm.

BACKGROUND

On April 22, 1988, plaintiffs entered into a real estate contract with defendants whereby defendants purchased from plaintiffs approximately 15.24 acres of vacant land located in Highland Park, Illinois. Although the parties' written agreement provided that the purchase price was $2,500,000, the agreement also provided that $500,000 of the purchase price was contingent on and would only become due in the event that defendants successfully obtained a rezoning classification of the subject parcel from the city council of Highland Park. Pursuant to the parties' written agreement, defendants agreed to use their "best efforts" to obtain the rezoning classification until their zoning request was denied and the decision of the Village of Highland Park became final, in which case their obligation with respect to the $500,000 would be cancelled.

After the conveyance of the property, defendants filed an application with the city council of Highland Park to change the zoning of the subject property from a classification of R-3, low density residential lots of approximately 40,000 square feet, to a classification of R-4, low to moderate density residential lots of approximately 20,000 square feet. On February 27, 1989, the city council unanimously denied defendants' request to rezone the subject property. Shortly thereafter, defendants subdivided the property into one-acre lots pursuant to the R-3 zoning classification, constructed public roads on the lots, and commenced the development and sale of the lots for single-family homes.

On November 6, 1989, plaintiffs filed a two-count complaint for declaratory judgment against defendants in the circuit court of Cook County seeking: (1) a judgment requiring defendants to either file and prosecute a legal action challenging the city council's zoning classification of the subject property or to authorize plaintiffs to file and prosecute such an action; and (2) the $500,000 portion of the

purchase fee that was contingent upon the subject property's rezoning. Plaintiffs alleged that defendants were in breach of contract because they had failed to pursue the subject property's rezoning beyond the level of proceedings before the city council of Highland Park as was required in the parties' written agreement.

In an amended complaint, plaintiffs also pled an entitlement to reformation of the contract based on fraud or a mutual mistake because the language of the parties' written agreement is at variance with the actual intention of the parties which resulted from a mutual mistake of fact or an understanding and agreement on the part of the plaintiffs that judicial review was to be available, of which defendants had knowledge but concealed that they had no intention of pursuing or authorizing such judicial review.

On November 26, 1990, plaintiffs filed a motion for partial summary judgment on their claims that they were entitled to a declaratory judgment finding that defendants are required to file a lawsuit seeking a reclassification of the city council's zoning of the subject property and that they were entitled to recover on the $500,000 "installment note" the payment of which was contingent on defendants successfully obtaining the subject property's zoning reclassification from the city council. Defendants filed a cross-motion for summary judgment. On January 18, 1991, the trial court denied both parties' motions and set the case for trial.

After plaintiffs' case in chief, the trial court entered an order granting defendants' motion for a directed finding and entered a judgment in favor of defendants and against plaintiffs on all four of plaintiffs' claims. Plaintiffs appeal from both the order entered denying their motion for partial summary judgment and the order granting defendants' motion for a directed finding.

OPINION

I

■ Initially, plaintiffs contend that the trial court erred in denying their motion for partial summary judgment. In their briefs, plaintiffs do not raise any arguments in support of this claim. However, since plaintiffs have raised this claim in their notice of appeal, we elect to address it.

Defendants argue that the result of a trial court's denial of a motion for summary judgement is merged by law into the subsequent trial. (See *Battles v. La Salle National Bank* (1992), 240 Ill. App. 3d 550, 558, 608 N.E.2d 438.) We agree.

Under Illinois law, the denial of a motion for summary judgment

or partial summary judgment is not reviewable following an evidentiary trial, because the result of any error in such denial is merged in the subsequent trial. See *Thurmond v. Monroe* (1992), 235 Ill. App. 3d 281, 285, 601 N.E.2d 1048.

## II

Plaintiffs' primary contention is that the trial court erred in entering a directed finding in favor of the defendants.

■ When reviewing a directed finding in a nonjury trial, the following principles apply:

> "The court must consider all of the evidence, including any favorable to the defendant, and is to pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and the quality of the evidence. *** The trial judge must first determine, as a legal matter, whether the plaintiff has made out a *prima facie* case. If he has not, the court should, without more, grant the motion and enter judgment in the defendant's favor.
>
> If, however, the plaintiff has made out a *prima facie* case, the trial judge, in his role as the finder of fact, must then weigh the plaintiff's evidence as aforesaid. This weighing process may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case, in which event the court should grant the defendant's motion and enter judgment in his favor. On the other hand, if sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made." (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43.)

A trial court's determination on the motion will not be reversed on appeal unless the decision is contrary to the manifest weight of the evidence. (*Kokinis*, 81 Ill. 2d at 154.) For the reasons that follow, we hold that the decision of the trial court in the case *sub judice* is supported by the evidence.

Plaintiffs specifically contend that the language of the parties' written agreement required the defendants to pursue rezoning beyond the proceedings before the city council of Highland Park. The contract provisions that relate to zoning are as follows:

> "2. Purchaser shall forthwith proceed to initiate *the filing of an application to the Village of Highland Park to change the classification of the property to R-4* as same is defined in the Highland Park Zoning Ordinance. Purchaser shall bear all costs, expenses and fees *in connection with and relating to obtaining an R-4 classification* and hereby indemnifies and holds Seller harmless from any claim or demand in connection therewith.
> * * *

Upon filing the application to change the zoning classification as aforesaid, *Purchaser shall use its best efforts to obtain the R-4 classification in an expeditious manner.*
* * *

4. *In the event the application to reclassify the property to R-4 (as set forth in paragraph 2 above) is denied and the decision of the Village of Highland Park has become final, then the Purchasers' entire obligation with respect to the $500,000 indebtedness* referred to in paragraph 3(b) of the printed portion of this Contract *shall be deemed cancelled and Void* and Purchaser shall have no further obligation with respect thereto.
* * *

5. *This transaction shall be closed* on or before *May 26, 1988, or* at Seller's sole election on a date *not later than 20 days after a final determination is made by the Village of Highland Park on the application to rezone the property to an R-4 classification."*
(Emphasis added.)

Plaintiffs argue that the "and the decision of the Village of Highland Park has become final" clause combined with the "[p]urchaser shall use its best efforts to obtain the R-4 classification in an expeditious matter" clause required defendants to pursue rezoning further by either seeking an administrative remedy or by filing a lawsuit challenging the city council's decision. They maintain that, with regard to the first of the two clauses, since within the government of the Village of Highland Park, a zoning request can only be "denied" by the city council, the fourth paragraph of the parties' written agreement requires proceedings at a level beyond the city council, or the clause "and the decision of the Village of Highland Park has become final" would be entirely meaningless and superfluous. With regard to the second clause, plaintiffs posit that since there is no language in the "best efforts" clause limiting the purchasers' obligations to proceedings before the city council, that clause required defendants to pursue rezoning further.

Plaintiffs also contend that the trial court erred in determining that the parties' written agreement was unambiguous as a matter of law with respect to defendants' obligation to pursue rezoning beyond the city council. The trial court below held as follows:

"[T]he court too is convinced the finality here is with the Village board. *** There is nothing in the instrument here that refers to the [court] action. Everything talked with the finality of the Village of Highland Park, paragraph 4 of the rider.

The court was particularly impressed with that language which says that [the] decision of the Village of Highland Park has been final."

Plaintiffs argue that since an ambiguous contract is one capable of being understood in more than one sense or one that is obscure in meaning through indefiniteness of expression or having a double meaning (see *Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 481, 476 N.E.2d 1271), and both parties intended that defendants would pursue rezoning beyond the city council in the event the request for rezoning was denied, the contract was ambiguous and the trial court erroneously determined that it was not ambiguous in that respect.

Defendants, however, respond that since there was no explicit provision in the parties' written agreement that required them to pursue rezoning beyond the city council, they were not obligated to do so. Defendants point out that the parties could have expressly provided for such an obligation in their written agreement, but did not and there was no evidence adduced at trial that *both parties* intended the agreement to be interpreted in this manner. Defendants further argue that each contract provision that relates to zoning, including the "best efforts" clause, specifically references only "R-4" zoning, which can only be granted by the city council, without reference to any language such as "or any court-mandated equivalent to R-4" and, as a result, the contract language is necessarily limited to proceedings before the city council *only*. Defendants posit that since the evidence presented below demonstrates their compliance with the contract in this respect, plaintiffs failed to present a *prima facie* case of breach of contract.

In the present case, the evidence shows that the plain language of the parties' agreement clearly and unambiguously indicates that the defendants were only required to pursue rezoning in proceedings before the city council and that the defendants complied with that obligation. We agree with the defendants that since each contract provision that relates to zoning only refers to "R-4" zoning, which, as both parties point out, can only be granted by the city council, the language of the parties' written agreement limits defendants' obligation to proceedings before the city council of Highland Park.

■ Where the language of a contract is unambiguous, the express provisions govern and there is no need for construction or inquiry as to the intention of the parties. (*P.A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1986), 112 Ill. 2d 196, 203, 492 N.E.2d 1288; *Wright v. Chicago Title Insurance Co.* (1990), 196 Ill. App. 3d 920, 924, 554 N.E.2d 511.) A court must construe the meaning of a contract by looking at words used and cannot interpret the contract in a way contrary to the plain and obvious meaning of those words. (*J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.* (1990), 194 Ill. App. 3d 744, 748, 551

N.E.2d 340.) The rights of parties to a contract are limited by the terms expressed in the contract. (*Wright*, 196 Ill. App. 3d at 925.) A court will not rewrite a contract to suit one of the parties, but will enforce the terms as written. (*Wright*, 196 Ill. App. 3d at 925.) There is a strong presumption against provisions that easily could have been included in the contract but were not. (*Wright*, 196 Ill. App. 3d at 925.) A court will not add another term about which an agreement is silent. *American States Insurance Co. v. A.J. Maggio Co.* (1992), 229 Ill. App. 3d 422, 427, 593 N.E.2d 1083.

Plaintiffs acknowledge that the plain language of the contract refers only to "R-4" zoning, which can only be granted by the city council of Highland Park. However, plaintiffs direct our attention to the clause that states "[p]urchaser shall use its best efforts to obtain the R-4 classification in an expeditious manner." Plaintiffs argue that since there is no language in this clause that limits the purchasers' obligation to proceedings before the city council, defendants were required to pursue rezoning after the city council's decision became final.

Plaintiffs maintain that their contention that defendants did not use their best efforts is supported by *Leonard v. Koval* (1989), 187 Ill. App. 3d 924, 929-30, 543 N.E.2d 911. However, *Leonard* is inapposite. In *Leonard*, this court held that where purchasers (1) take no action to pursue rezoning from a city's plan commission board for nearly two months after the escrow agreement is signed, (2) initially present their application before the wrong board, (3) request a greater zoning variance than the parties agreed to, and (4) fail to present the type of evidence ordinarily presented in seeking a zoning amendment from the board, they fail to use their "best efforts" to accomplish the required zoning change. (See *Leonard*, 187 Ill. App. 3d at 929-30.) *Leonard* did not involve any proceedings beyond that branch of a municipal government authorized to grant zoning classifications. (See *Leonard*, 187 Ill. App. 3d at 929-30.) Here, unlike *Leonard*, defendants clearly used their "best efforts" in attempting to obtain the zoning classification from the only branch of the city government that is authorized to grant zoning changes.

Plaintiffs further contend that if we determine that the parties' written agreement is ambiguous in this respect, then its construction is a question of fact, and parol evidence is admissible to explain and ascertain what the parties intended. (See *Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 447, 581 N.E.2d 664.) They argue that, if we conclude that the agreement was ambiguous, then the trial court's decision must be reversed because the trial court precluded evidence of what was intended by the clauses in question. Plaintiffs posit that

the following three items of evidence, if admitted, would have proven that it was the intention of the parties that defendants would pursue the rezoning issue beyond the city council: (1) testimony of Mr. Velk, the attorney that represented plaintiffs in the transaction, that he understood that the agreement required defendants to pursue rezoning beyond the level of the city council; (2) a draft agreement between the parties for adjacent property owned by plaintiffs that was part of the total parcel of 18.315 acres submitted to the city council for rezoning; and (3) testimony of Mr. Velk concerning an alleged conversation with Mr. Hergott, president of defendant Hergott Group, Inc., d/b/a Castlewood Development Company, about what was to occur in the event that the rezoning request was denied.

Defendants, however, respond that: (1) since Mr. Velk was only asked about *his own* understanding of the agreement, his testimony in this regard was properly excluded as irrelevant to what *the parties to the contract* intended; (2) the plaintiffs have waived any argument concerning the draft agreement by failing to make it part of the record on appeal (see *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 521, 513 N.E.2d 387) and, in any event, the trial court's exclusion of the draft agreement was proper because that agreement concerns property that is not the subject of this lawsuit and was prepared after the contract at issue in this case was executed, thus making it irrelevant to this case; and (3) Mr. Velk's testimony concerning an alleged conversation with Mr. Hergott as to what was to occur in the event the rezoning request was denied does not in any way demonstrate that the *parties themselves* reached an actual agreement in that respect. We agree.

■ As previously stated, we hold that the trial court correctly determined that the parties' written agreement was not ambiguous as a matter of law. Moreover, assuming *arguendo* the written agreement was ambiguous, there is no merit in plaintiffs' arguments in this respect. Under Illinois law, a particular interpretation that one party may have envisioned at the time the contract was executed is immaterial. *A.J. Maggio Co.*, 229 Ill. App. 3d at 427; *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 658, 475 N.E.2d 1327.

Another contention by plaintiffs is that: (1) the natural and ordinary meaning of the term "final" and its accepted dictionary definition, "of or relating to a concluding court action or proceeding" (Webster's New Collegiate Dictionary 24 (1980)), require this conclusion; (2) judicial construction of the term "final" is consistent with this definition (see *People ex rel. Martin v. White* (1946), 329 Ill. App. 81, 91, 67 N.E.2d 498); (3) a contrary conclusion would require

reading language into the parties' written agreement that limits defendants' obligation to use their "best efforts" to proceedings before the city council where no such language was included; and (4) a contrary conclusion would render nugatory and superfluous both the "and the decision of the Village of Highland Park has become final" clause and the "best efforts" clause.

Although, as we have stated elsewhere in this opinion, we hold that the parties' written agreement is *un*ambiguous in that it required defendants to pursue rezoning in proceedings before the city council *only*, we elect to address plaintiffs' contention.

With regard to the accepted dictionary definition of the term "final," we do not dispute plaintiffs' proffered definition of that term. However, there was a "final" proceeding in the present case, before the city council of Highland Park. As discussed earlier, this interpretation of the parties' written agreement is consistent with the plain language of the entire agreement, which only references "R-4" zoning which, as both parties point out in their respective briefs, can only be granted by the city council of Highland Park. Moreover, Mr. Hergott testified at trial that, based on his experience in zoning matters, he interpreted the "and the decision of the Village of Highland Park has become final" clause to mean that the city council's decision would only become final 30 days after it had made a determination to either grant or deny the rezoning request. Mr. Hergott also testified that in his interpretation of the clause, it did not contemplate review of the city council's decision by a higher or different body. Accordingly, our holding is consistent with the accepted dictionary definition of the term "final," the plain language of the parties' written agreement, as well as the evidence adduced below as to *both parties'* interpretation of the contract.

We also find plaintiffs' contention that judicial construction of the term "final" as seen in *White* requires reversal to be unconvincing because *White* is inapposite to the present case. In *White*, the court held that, with respect to the Illinois Election Code, the Illinois legislature must have intended that majority decisions of local electorial boards concerning the validity of nominating certificates shall be final only when such decisions have been arrived at "by a legally constituted board, in a legal manner, pursuant to competent evidence, without the abuse of discretion, not arbitrarily or fraudulently." (*White*, 329 Ill. App. at 91.) The rationale that buttressed *White* was that if the statute were to be construed otherwise, justice and democracy would be threatened because the final decisions of electoral boards, even though fraudulent, arbitrarily arrived at, or based on a clear abuse of discretion and without any

evidence supporting the decision could be used by majority leaders who happened to have control of the political machinery to unfairly disfranchise majority candidates. (See *White*, 329 Ill. App. at 91.) The rationale in *White* does not apply in the present case, which is merely a dispute between private parties and does not in any way threaten our democratic system.

Plaintiffs also argue that the decision of the city council of Highland Park was legally invalid and that defendants could have prevailed if they had pursued the matter in court. Plaintiffs maintain that, by not pursuing the matter in a lawsuit against the Village of Highland Park, defendants are in breach of contract.

Since we hold that defendants had no duty to pursue the matter in court, we do not address this issue.

Plaintiffs further argue that, at trial, they presented sufficient evidence for a *prima facie* case of contract reformation. They maintain that since the evidence adduced at trial reveals that Mr. Klemp and Mr. Velk were under the impression that defendants would proceed with court action in the event that the city council turned down the rezoning request and defendants never intended to do so, there was a sufficient basis for contract reformation.

Defendants, however, respond that there is no sufficient basis in the record for contract reformation because plaintiffs presented no evidence that *all parties* to the purchase agreement ever had a meeting of the minds or actually agreed that defendants would be required to pursue their rezoning efforts beyond proceedings before the city council of Highland Park or that defendants fraudulently concealed from plaintiffs the absence of such a requirement at the time the parties' written agreement was executed. We agree.

There is a presumption that a written instrument conforms to the intention of the parties thereto, and this conclusion will not yield to any other unless the contrary evidence is clear and convincing. (*Suburban Bank v. Bousis* (1991), 144 Ill. 2d 51, 59, 578 N.E.2d 935; *Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 800, 452 N.E.2d 542.) Equity cannot make a new agreement for the parties under the color of reforming the one made by them, nor can it be used to add a provision to the contract that was never agreed upon. (*Bousis*, 144 Ill. 2d at 60.) Therefore, in an action for contract reformation, a plaintiff has the burden of proving by very strong, clear and convincing evidence that: (1) there has been a meeting of the minds resulting in an actual agreement between the parties; (2) the parties agreed to reduce their agreement to writing; and (3) at the time that the agreement was reduced to writing and executed, some agreed-upon provision was omitted or one not agreed upon was

inserted either through mutual mistake or through mistake by one party and fraud by the other. (See *Magnus v. Lutheran General Health Care System* (1992), 235 Ill. App. 3d 173, 183-84, 601 N.E.2d 907; *Sheldon*, 116 Ill. App. 3d at 800.) In actions like this one, for reformation based on the existence of a unilateral mistake coupled with fraud, we have looked to whether the parties have reached a mutual agreement and whether the defendant, knowing that the instrument finally prepared does not accurately reflect that agreement, has concealed the defect from the plaintiff at the time of execution. (See *Sheldon*, 116 Ill. App. 3d at 802.) We find no merit to plaintiffs' claim.

■ Finally, plaintiffs posit that they are entitled to recover on the $500,000 "installment note" which defendants gave to plaintiffs as part payment of the purchase price. We disagree.

The "installment note" states in pertinent part:

"Anything contained herein to the contrary notwithstanding, in the event the application to reclassify the property to R-4 (or PUD or other classification which would allow a density greater than R-4) is denied and the decision of the City of Highland Park has become final, then the Maker's entire obligation with respect to the $500,000 indebtedness evidenced hereby shall be deemed cancelled and void and Maker shall have no further obligation with respect thereto."

As we stated earlier, we hold that the decision of the city council of Highland Park to deny defendants' request for rezoning was "final" as that term was used in the parties' written agreement. Moreover, as plaintiffs point out, the note and the contract were integral parts of the same transaction.

For all of the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

MURRAY, P.J., and McNULTY, J., concur.