**Ann ROSE, Michael Scott, Wendie Rose Scott and Michael Rose, Plaintiffs,**

v.

**MONY LIFE INSURANCE COMPANY, Mutual Life Insurance Company of New York, Mony Life Insurance Company of America, Raymond C. Veselik and Scott Veselik, Defendants.**

**No. 99 C 4279.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 1, 2000.

---

Nathan H. Lichtenstein, Lisa J. Brodsky, Paul Andrew Greenberg, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, for Ann Rose, Michael Scott, Wendie Rose Scott, Michael Rose.

Steven Michael Hartmann, Aren Lance Fairchild, Freeborn & Peters, Chicago, IL, for Mony Life Insurance Co., Mutual Life Insurance Company of New York, Mony Life Insurance Company of America.

David A. Baugh, Ellen Louise Flannigan, Mora & Baugh, Ltd., Chicago, IL, for Raymond C. Veselik, Scott Veselik.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Ann Rose, Michael Scott, Wendie Rose Scott and Michael Rose have sued defendants Mony Life Insurance Company, Mutual Life Insurance Company of New York, Mony Life Insurance Company of America, (collectively, "MONY"), Raymond C. Veselik ("Raymond") and Scott Veselik ("Scott") alleging violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962 *et seq.* ("RICO"), as well as state law claims for fraud, violations of the Illinois Consumer Fraud Act, negligent retention, breach of fiduciary duty, breach of contract, and reformation. MONY and Raymond have moved to dismiss the RICO counts (I and II) for failure to state a claim, and the state law claims for lack of pendant jurisdiction.[1] MONY also argues that (a) all counts are barred by the applicable statute of limitations, (b) Counts III and IV (fraud and Illinois Consumer Fraud Act) fail to allege fraud with sufficient particularity, and (c) Counts V and VIII (negligent retention and reformation) fail to state a claim. In addition to the arguments raised by the other defendants, Scott argues that there is no pendant jurisdiction over him because he is not a defendant to the federal RICO counts. For the reasons set forth below, the court grants the defendants' motion to dismiss with respect to Counts I and II, but grants plaintiff leave to file an amended Count II along with a RICO case statement. The motions to dismiss are denied in all other respects.

### *Facts*

According to the allegations of the complaint, defendant Raymond Veselik became a close friend and personal financial advisor to plaintiff Ann Rose after her husband died in 1974. During the following year, Ann became increasingly dependent on Raymond for assistance in all matters involving her assets and estate. This dependence intensified in 1987 when Ann then 65, suffered a serious illness, and continued into the 1990s.

Throughout the relevant time period, Raymond was an insurance agent for MONY and the employee manager of the MONY Agency located in Itasca, Illinois ("Agency"). Scott is Raymond's son and worked in the Agency. Plaintiffs allege that starting in 1976, Raymond devised and engaged in a scheme to induce plaintiffs to purchase and continue to purchase and maintain insurance policies and annuities through the use of oral and written misrepresentations, as well as unauthorized loans and transfers and/or fraudulently secured authorizations for loans and transfers. Among the alleged misrepresentations made by Raymond and or Scott are that: 1) the MONY insurance policies sold to plaintiffs were good and appropriate investments that would "pay for themselves" or constitute fully paid up policies with no further premiums due after several years of premium payments; 2) after a policy was "paid up" or its cash value covered the amount of premium due, a new policy could be purchased without any additional cash because the new policy's premium would be funded solely by income from or loans against the older policies; 3) the policies would continue in force and increase in value despite loans taken against them; and 4) death benefits would not be reduced by loans against the policy.

In 1995 Raymond took Ann to a lawyer and had her execute documents making Raymond executor of her estate. Also in 1995 Ann Rose transferred her entire investment portfolio, in excess of $1,000,000, to Mony Securities Corp. through Raymond's other son, Randall Veselik, a Mony Securities Corp. agent.

---

**1.** Apparently, Scott's counsel is unaware that in 1990 the doctrine of pendant jurisdiction has been redefined as supplemental jurisdiction in 28 U.S.C. § 1367.

From 1976 through 1996, relying on defendants' misrepresentations Ann, her son Michael, daughter Wendie Scott and son-in-law Michael Scott purchased in excess of 23 MONY life insurance policies and annuities.

The complaint further alleges a second scheme perpetrated on William K. Maloney and Alyce L. Maloney during 1987, and 1995 though 1996. Plaintiffs allege that MONY became aware of the Maloneys' claims of fraud as early as May 1996, yet continued to process loans and withdrawal requests received from Raymond with respect to plaintiffs' policies. The complaint sets forth 18 separate incidents of misrepresentations made by Raymond and Scott to various plaintiffs relating to different policies or annuities purchased.

### Discussion

*The RICO Counts*

*Count I: § 1962(a)*

Counts I and II allege RICO violations against Raymond and MONY. Count I alleges a violation of § 1962(a). MONY and Raymond have both moved to dismiss Count I for failure to state a claim, arguing that the complaint: 1) fails to allege an injury resulting from the investment of racketeering income; 2) fails to allege a pattern of racketeering activity and; 3) fails to identify a RICO enterprise.

Section 1962(a) prohibits "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income and the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect interstate commerce." Section 1964(c) in turns provides a cause of action to anyone injured in his business or property "by reason of" a violation of § 1962. Defendants argue that plaintiffs have not alleged that they have been injured "by reason of" a § 1962(a) violation. Put in other words, defendants argue that plaintiffs have not and cannot allege that they have been injured by defendants' "use of any income" derived from the pattern of racketeering activity, as opposed from being injured by the predicate acts themselves.

■ As the parties have noted, the Seventh Circuit has not yet addressed the issue of whether to state a claim under § 1962(a) the plaintiff must allege injury from the use or investment of income derived from racketeering activity. The majority of circuit courts to address the issue have held that such allegations are necessary, and that allegations of injury from the racketeering activity alone are insufficient. *See Fujisawa Pharmaceutical Co. Limited v. Kapoor*, 814 F.Supp. 720, 734 (N.D.Ill.1993) (compiling cases). These decisions are based on the plain wording of the statute. *Id.* This court agrees with the reasoning of those cases, and notes particularly, Judge Shadur's explanation in *P.M.F. Services, Inc. v. Grady*, 681 F.Supp. 549, 556 (N.D.Ill.1988):

> By contract § 1964's private civil remedy mandates the identification of such victims, in order that they have standing to sue. Most importantly, each such victim must have been "injured in his business or his property by reason of a violation of § 1962...." Hence the nature of the claim necessarily depends on the nature of the "violation"—and in each instance the specific subsection of § 1962 makes the violation not the conduct or racketeering activity alone, but rather the use of that racketeering activity in the particular way the subsection declares unlawful. Once again that means a specific subsection—in this instance § 1962(a)—may not provide a universal remedy to serve the purposes, or to fit the mandate, of § 1964.

■ Although plaintiffs ask this court to adopt the minority rule, they also argue that they have nonetheless alleged injury resulting from the defendants' investment of the racketeering proceeds in the Agency and MONY. Plaintiffs argue that because they allege that Raymond used his illegally

earned commissions and MONY invested illegally received income to keep the Agency open, thereby making it possible for defendants to continue the alleged scheme, they have alleged injury from the investment. To support this argument they rely on Judge Moran's opinion in *Pinski v. Adelman,* 1995 WL 669101 (N.D.Ill. Nov.7, 1995), which involved a remarkably similar scheme to sell life insurance policies. Judge Moran, after determining that injury resulting from the investment of racketeering income was required under § 1962(a), then held that a general allegation that defendants used the commission to maintain the insurance sales business was a sufficient allegation of investment injury.

This court respectfully disagrees with Judge Moran's conclusion in *Pinski.* Although, as Judge Moran states, the "churning scheme, if proved, involved an investment of the racketeering income in an enterprise that damaged the plaintiff's business or property," *Id.* at *9, it must be the investment, not the enterprise, that injures the plaintiff. By holding as he did, Judge Moran essentially held that damage from the predicate act is sufficient, rendering § 1962(a) redundant to § 1962(c), something he specifically rejected three paragraphs earlier. *Id.* Moreover, *Sutliff Inc. v. Donovan Companies, Inc.,* 727 F.2d 648 (7th Cir.1984) (overruled on other grounds), the case on which Judge Moran relied, is inapposite. In *Sutliff,* the plaintiff Sutliff Inc., a bankrupt corporation, and two of its creditors sued the defendants under all three RICO sections, alleging that those defendants, knowing that Sutliff was going under and that its sole owner and operator, Ms. Sutliff, was psychologically incapacitated, made cash advances to her to induce her to sell them oil below cost. The defendants then resold that oil at a profit but below market prices. The defendants knew that they were driving Sutliff to inevitable ruin, but the small cash advances were intended to and did

persuade Sutliff's creditors that Sutliff was solvent, convincing them to continue to extend Sutliff credit. Therefore, the allegation that the defendants reinvested into Sutliff the income earned from the racketeering activity was sufficient, because it was the reinvestment itself that harmed the plaintiff creditors by inducing them to extend credit.

In the instant case, there is no allegation that absent the alleged fraudulent scheme the Agency would have gone under, or that the reinvestment of the fraudulently obtained money into the Agency or into MONY was intended to deceive plaintiffs into continued dealing with Raymond. Indeed, the complaint specifically alleges that plaintiffs continued to deal with Raymond because of a special relationship that he had developed with plaintiff Ann Rose. Therefore, *Sutliff* lends no support to plaintiffs' position. Count I is therefore dismissed for failure to allege an injury to plaintiffs resulting from a violation of § 1962(a).[2]

*Count II: § 1962(c)*

In Count II, plaintiffs allege that Raymond and MONY have violated § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

To state a claim under § 1962(c), plaintiffs much allege: 1) the existence of an enterprise affecting interstate commerce; 2) that defendant was employed by or associated with the enterprise; 3) that defendant participated in the conduct of the enterprise's affairs; and 4) that defendants participated through a pattern of racketeering activities. *Williams Electronics*

---

2. Because Count I fails to allege investment injury, the court need not reach defendants' other arguments that Count I fails to allege an enterprise or a pattern of racketeering activity.

*Games, Inc. v. Barry,* 42 F.Supp.2d 785, 790 (N.D.Ill.1999).

MONY and Raymond raise a number of challenges to Count II: 1) failure to allege an enterprise; 2) failure to allege an enterprise separate from the RICO person; 3) failure to allege pattern or racketeering activity with respect either to Raymond or MONY; 4) failure to plead fraud with specificity; 5) with respect to MONY, failure to state a claim for vicarious liability; 6) that the claim is barred by the applicable statute of limitations.

■ With respect to defendants' first argument, the complaint very clearly identifies the Agency as an enterprise, MONY as a RICO person and an enterprise, and Raymond as a RICO person and an enterprise. Count II specifically alleges that Raymond, as a RICO person, was employed by or associated with the Agency. Thus, with respect to Raymond, he is identified as the RICO person (defendant) and the Agency is defined as the RICO enterprise.

■ The allegations against MONY are less clear. MONY is alleged to be a person associated with Raymond and the Agency. Both Raymond and the Agency have been defined as separate enterprises, but no enterprise is alleged consisting of the Agency and Raymond as an association in fact. Thus, the count appears to allege that MONY participated in the conduct of Raymond's affairs and the conduct of the Agency's affairs, in some unspecified manner. Additionally, Count II also alleges that MONY is vicariously liable for Raymond's violations of § 1962(c) because it continued to accept the benefits of the scheme after knowing of Raymond's wrongdoing. It is unclear whether Count II attempts to allege a direct RICO violation against MONY, or simply a claim for vicarious liability, or both. Because of this ambiguity, and because it is unclear how MONY is alleged to have participated in the alleged enterprises' affairs, the court dismisses Count II without prejudice and grants plaintiffs leave to file an amended Count II, along with a RICO case statement in the form attached to this opinion. The defendants' remaining attacks on Count II, as well as the argument that the fraud counts have not been pleaded with sufficient particularity should be resolved by the filing of the RICO case statement.

### *State Claims*

■ In Count V, plaintiffs allege that MONY negligently retained Raymond and Scott after learning of the scheme. MONY claims Count V fails to state a claim for negligent retention, arguing that the complaint fails to allege a sufficient injury to plaintiffs after MONY was alleged to have been aware of the scheme. *See Van Horne v. Muller,* 185 Ill.2d 299, 235 Ill.Dec. 715, 705 N.E.2d 898 (1998). The complaint very clearly alleges, however, that MONY became aware of Raymond's indiscretions with respect to the Maloneys as early as May 1996, yet continued to take orders from Raymond and continued to allow Raymond to operate the Agency, causing injury to plaintiffs in the form of premium payments on existing and newly purchased policies. This is sufficient to put MONY on notice of plaintiffs' claim.

■ MONY also argues that Count VIII for reformation is inadequate because it does not specifically identify each contract that plaintiffs claim should be reformed. The complaint clearly pleads the elements of reformation: 1) a meeting of the minds between the parties that resulted in an actual agreement; 2) an agreement to reduce the agreement to writing; and 3) at the time the agreement was reduced to writing and executed, some agreed upon provision was omitted or one not agreed upon was inserted either through mutual mistake or by mistake by one party and fraud by the other. *Klemp v. Hergott Group, Inc.,* 267 Ill.App.3d 574, 584–85, 204 Ill.Dec. 527, 641 N.E.2d 957 (1st Dist.1994). MONY can, through discovery, obtain the specific policies for which plaintiff claims reformation, many of which, contrary to defendants' assertion,

have been identified in the complaint and will more than likely be identified in the RICO case statement.

Finally, contrary to Scott's assertion, this court has supplemental jurisdiction over the claims against him because they clearly arise out of the same set of facts and form part of the same case or controversy. 28 U.S.C. § 1367(a). Additionally, defendants' argument that the claims are barred by the applicable statute of limitations is premature. The complaint alleges that despite repeated requests, plaintiffs were unable to obtain copies of the specific policies in question until sometime in 1997. Moreover, plaintiffs claim that they were so unable because of Raymond's and Scott's attempts to avoid detection. Whether any of plaintiffs' claims with respect to a particular policy are time barred depends, at least in part, on when plaintiffs received copies of the policy. That is a question of fact that cannot be resolved on a motion to dismiss.

### Conclusion

For the reasons set forth above, MONY's and Raymond Veselik's motion to dismiss Counts I and II is granted. Plaintiff is given leave to file an amended Count II and a RICO case statement on or before March 1, 2000. Defendants shall respond to the amended complaint on or before March 21, 2000. MONY's, Raymond Veselik's and Scott Veselik's motion to dismiss are denied in all other respects. This matter is set for a report on status March 22, 2000, at 9:00 a.m.

### APPENDIX

The plaintiff shall file, on or before March 1, 2000, a RICO case statement. This statement shall include the facts the plaintiff is relying upon to initiate this RICO complaint as a result of the "reasonable inquiry" required by > Fed.R.Civ.P. 11. In particular, this statement shall be in a form which uses the numbers and letters as set forth below, and shall state in detail and with specificity the following information.

1. State whether the alleged unlawful conduct is in violation of > 18 U.S.C. SS 1962(a), (b), (c), and/or (d).

2. List each defendant and state the alleged misconduct and basis of liability of each defendant.

3. List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.

4. List the alleged victims and state how each victim was allegedly injured.

5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:

a. List the alleged predicate acts and the specific statutes which were allegedly violated;

b. Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;

c. If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." > Fed.R.Civ.P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;

*3 d. State whether there has been a criminal conviction for violation of the predicate acts;

e. State whether civil litigation has resulted in a judgment in regard to the predicate acts;

f. Describe how the predicate acts form a "pattern of racketeering activity"; and

g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.

6. Describe in detail the alleged enterprise for each RICO claim. A description

of the enterprise shall include the following information:

a. State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;

b. Describe the structure, purpose, function and course of conduct of the enterprise;

c. State whether any defendants are employees, officers or directors of the alleged enterprise;

d. State whether any defendants are associated with the alleged enterprise;

e. State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and

f. If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.

11. If the complaint alleges a violation of > 18 U.S.C. S 1962(a), provide the following information:

a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

b. Describe the use or investment of such income.

12. If the complaint alleges a violation of > 18 U.S.C. S 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

13. If the complaint alleges a violation of > 18 U.S.C. S 1962(c), provide the following information:

a. State who is employed by or associated with the enterprise; and

b. State whether the same entity is both the liable "person" and the "enterprise" under S> 1962(c).

14. If the complaint alleges a violation of > 18 U.S.C. S 1962(d), describe in detail the alleged conspiracy.

15. Describe the alleged injury to business or property.

16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

17. List the damages sustained for which each defendant is allegedly liable.

18. List all other federal causes of action, if any, and provide the relevant statute numbers.

19. List all pendent state claims, if any.

20. Provide any additional information that you feel would be helpful to the court in processing your RICO claim.