In re Farrel G. DAME, Barbara
E. Dame, Debtors.

Steven N. Mottaz, Trustee, Plaintiff,

v.

Union Planters Bank, N.A., Defendant.

Bankruptcy No. 00–31606.
Adversary No. 01–3193.

United States Bankruptcy Court,
S.D. Illinois.

Oct. 12, 2001.

—————

Steven N. Mottaz, Alton, IL, for petitioner.

Cherie K. Macdonald, Belleville, IL, for defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Prior to the date that the debtors filed for bankruptcy relief under chapter 7, Union Planters Bank, N.A., (UPB) set off funds in a bank account held in joint tenancy by the debtors, Farrel G. Dame (Farrel) and Barbara E. Dame (Barbara), and a third party, Lisa K. Schnaare–Clark, in partial satisfaction of a debt owed to UPB solely by Barbara. The trustee in bankruptcy, arguing that Farrel was the owner of one-half of the set off funds, contends that UPB was not entitled to set off the debt of Barbara against Farrel's share of the funds, and seeks recovery of Farrel's share. The issue before the Court is whether a bank may set off a debt owed to it by one depositor from funds in a joint bank account without regard to ownership of the funds.

The facts are not in dispute. In 1992, the debtors and Ms. Schnaare–Clark opened a deposit account in joint tenancy with right of survivorship and the three continued to possess the account at all times relevant to this case. The account was governed by the terms of the Deposit Account Agreement and Disclosure (Agreement). Long after the joint account was established, B Dame Marketing, Inc., by its CEO, Barbara E. Dame, executed a promissory note payable to UPB in the principal sum of $120,000.00. Barbara personally guaranteed payment of the note by signing a Commercial Guaranty (Guaranty). The note matured on October 30, 1999, and remained unpaid at the time of the setoff.

On February 25, 2000, the debtors sold their residence, which they held in joint tenancy, and received cash from the sale in the amount of $37,233.28. A few days later, on February 28, 2000, they deposited the sum of $15,400.00 in the joint deposit account at UPB.[1] On March 14, 2000, UPB set off deposit account funds of $14,852.18 against the unpaid balance on the promissory note guaranteed by Barbara.

The debtors filed a petition under chapter 7 of the Bankruptcy Code on June 8, 2000, prompting the trustee to file the instant adversary complaint to recover the sum of $7,426.09, representing Farrel's share of the funds that were set off from the joint account to pay Barbara's debt. The trustee's argument opposing the setoff is two-fold. First, he argues that the language in the account documents and in the loan guaranty was insufficient to contractually authorize UPB to set off funds belonging to Farrel to satisfy Barbara's debt. Second, he contends that Illinois law creates merely a presumption that each of the owners of a joint bank account may be treated as the absolute owner of all funds in the account. This presumption, he asserts, may be rebutted by proof that the funds, or a portion of them, are owned by a particular depositor.

---

1. There is no evidence of record as to the disposition of the balance of the sale proceeds totaling $21,833.28.

UPB counters that the loan Guaranty, the deposit account Agreement and Illinois property law [2] expressly authorize the set-off. It further contends that the Illinois Supreme Court has held definitively that ownership of funds in a joint deposit account is regulated by the contractual relationship between the bank and its depositors and that tracing the source of the funds is irrelevant to the inquiry.

■ Turning first to the trustee's argument that the contract language does not allow UPB to set off Farrel's share of the joint account to satisfy Barbara's debt, the Court will apply Illinois principles of contract construction.[3] The primary goal in construing a contract is to give effect to the parties' intent. *See, e.g., Schek v. Chicago Transit Authority,* 42 Ill.2d 362, 247 N.E.2d 886, 888 (1969). The starting point for this examination is the contract itself. *See, Air Line Stewards & Stewardesses Ass'n, Local 550 v. American Airlines, Inc.,* 763 F.2d 875, 877–78 (7th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986) (setting forth the basic tenets of Illinois law regarding the construction of contracts). If the language of the contract is clear and unambiguous, the Court's inquiry ends and the Court declares the meaning of the contract. *Id.* at 878. If, however, the contract is found to be ambiguous, the Court must examine "not only the language of the contract but also any extrinsic or parol evidence presented by the parties," *id.,* to prove up the meaning of the contract.

■ The contract between UPB and the joint depositors was integrated, consisting of the Account Card, the Agreement and other documents unrelated to this discussion. The Account Card established a joint account with right of survivorship in the names of "F. Gene or Barbara Dame or Lisa K. Schnaare–Clark." Pertinent provisions of the Agreement stated as follows:

> **INTRODUCTION.** In this Deposit Account Agreement and Disclosure, **each and all of the depositors are referred to as "you" and "your."** The Financial Institution is referred to as "we," "our," and "us." This Deposit Account Agreement contains the terms and conditions governing certain of your deposit accounts with us. As used in this document, the term "Agreement" means this document, the signature card.... **Each of you maintaining or using a deposit account acknowledges receipt of this Agreement, and agrees to the terms set forth in the Agreement....** (Emphasis added).
>
> ....
>
> **MULTIPLE PARTY ACCOUNTS** ....
>
> ....
>
> **Each joint Account Holder, without the consent of any other Account Holder, may, and hereby is authorized by every other joint Account Holder, to make any transaction permitted under the Agreement, including with-**

**2.** 765 ILCS 1005/2(a) provides:
When a deposit in any bank ... has been made or shall hereafter be made in the names of 2 or more persons payable to them when the account is opened or thereafter, the deposit or any part thereof or any interest or dividend thereon may be paid to any one of those persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all those persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made.

**3.** The parties have referred to the law of the state of Illinois in their arguments to the Court, and the Court agrees that Illinois law controls the issues before it.

out limitation, (1) **to withdraw all or any part of the account funds, (2) to pledge the account funds as collateral to us for any obligation, whether that of one or more Account Holders** or of a third party, . . . and (5) **to close the account, with the disbursement of account proceeds as instructed by the joint Account Holder. Each joint Account Holder is authorized to act for the other Account Holder(s), and we may accept orders and instructions regarding the account from any joint Account Holder** . . . .

Your obligations under the Agreement are joint and several. This means that each joint Account Holder is fully and personally obligated under the terms of the Agreement, including liability for overdrafts and debit balances as set forth above. Further, **the Account is subject to the right of setoff as set forth below.** (Emphasis added).

. . . .

**CUSTOMER ACKNOWLEDGEMENT OF AGREEMENT.** The information contained in the Deposit Account Agreement . . . constitutes the entire agreement governing the account you have opened, which you agree to observe. . . . **By maintaining or using your Account, you acknowledge that you agree to be bound by the terms and conditions stated in the Deposit Account Agreement.** . . . (Emphasis added).

The Court finds no ambiguity whatsoever in the language of the contract governing ownership of the deposit account. The Account Card established that the bank account was owned in joint tenancy by Farrel or Barbara or Ms. Schnaare–Clark. The Agreement then provided that each account holder, by maintaining or using the account, agreed to be bound by the terms of the Agreement. Among the terms and conditions to which the account and the account holders were subject were provisions allowing each account holder on a multiple party account to treat all funds in the account as though he or she were the sole and absolute owner of the funds. Thus, each account holder was free to, among a non-exclusive list of transactions, withdraw all of the funds, pledge the funds to UPB as collateral for any obligation—regardless of whether that obligation belonged to only one of the account holders—and close the account, disbursing the proceeds as he or she saw fit. The Agreement stated that each account holder could exercise such absolute control over any and all funds in the account without the consent of any other account holder and that such unilateral action was authorized by every other account holder. Indeed, the language of the Agreement made each account holder the agent of the other account holders, imbuing each with authority to act for the others and allowing UPB to accept orders and instructions regarding the account from any account holder.

Under these provisions, Barbara, like every other account holder, was free to treat the entire account as her sole property and to encumber all funds in the account. She did so by executing the loan Guaranty which stated in relevant part:

**LENDER'S RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, **Lender shall have,** with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, **a contractual security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender** all of Guarantor's right, title and interest in and to, **all deposits, moneys,** securities and other

property of **Guarantor now or hereafter in the possession of or on deposit with Lender,** whether held in a general or special account or deposit, **whether held jointly with someone else,** or whether held for safekeeping or otherwise.... (Emphasis added).

This provision unequivocally granted UPB the right to set off Barbara's obligation under the Guaranty against any and all funds she had at the bank, including funds held in joint accounts.[4]

In addition, the Agreement itself stated unequivocally that the account was subject to UPB's right of setoff, and that each account holder consented to such setoff, even when the debt to be satisfied was the individual obligation of only one of the joint account holders. In this respect, the Agreement provided:

**RIGHT OF SETOFF.** Subject to applicable law, **we may exercise our right of setoff against any and all of your [5] Accounts** without notice, **for any liability or debt of any of you, whether joint or individual,** whether direct or contingent, whether now or hereafter existing, **and whether arising from** overdrafts, endorsements, **guarantees,** loans, or other obligations. **Each joint account holder authorizes us to exercise our right of setoff against any and all Accounts of each account holder.** (Emphasis added).

Thus, although Farrel was not a party to the loan Guaranty, by maintaining and using the deposit account, Farrel agreed to contractual terms permitting the set off of account funds to satisfy Barbara's debt.

The trustee argues unconvincingly that the language of the Agreement and of the

Guaranty was insufficient for Farrel to have granted UPB the right to set off Farrel's share of the home sale proceeds in the deposit account. Reciting a provision from joint certificates of deposit at issue in the case of *Fisher v. State Bank of Annawan,* 163 Ill.2d 177, 205 Ill.Dec. 520, 643 N.E.2d 811, 812 (1994), he contends that the absence of identical language in the Guaranty and in the Agreement rendered their language inadequate. The certificates of deposit in *Fisher* each stated:

If more than one depositor is named above, and unless specifically indicated therein to the contrary, this certificate and the deposit evidenced hereby, shall belong to said depositors as joint tenants with right of survivorship (and not as tenants in common); provided, however, for all purposes, including endorsement, payment of principal and interest, presentation, transfer, and any notice to or from the depositors, this institution may deem and treat as the absolute owner hereof any one depositor named above, or the survivor or survivors, and each such depositor shall be the agent of each other depositor for all the foregoing purposes.

*Fisher,* 205 Ill.Dec. 520, 643 N.E.2d at 812.

The Court finds the trustee's comparison to be purely superficial. While arguing that the Agreement failed to contain necessary verbiage, he ignores altogether the Agreement's language with respect to multiple party accounts. As noted above, this language not only established in Barbara absolute ownership of the account, including the right to pledge it for her individual debts, but also authorized UPB to treat her as the agent of the other account

---

4. By signing the Guaranty, Barbara also granted UPB a security interest in all funds she had at the bank and pledged the funds to UPB. The trustee has not challenged the validity or perfection of the security interest.

5. References to "you" and "your" throughout the document apply to each depositor as well as to all depositors.

holders for this and other purposes. In addition, by maintaining and using the joint account, Farrel expressly authorized Barbara's conduct with respect to all funds in the account and consented specifically to the set off from the joint account of debts owed by a single account holder. While the Agreement's language did not mirror that in the *Fisher* certificates of deposit, it need not have done so to sufficiently establish UPB's right to set off Barbara's debt against all funds in the account.[6]

■ Since the language of the Agreement and the Guaranty are unambiguous, the Court may not examine extrinsic evidence showing that the written contract departed from the parties' true intent with respect to treatment of funds in the account. Nonetheless, were the Court allowed to consider extrinsic evidence of the parties' intent, the trustee has failed to produce any. While the parties agree that the debtors deposited home sale proceeds of $15,400.00 into the joint account, this fact reveals nothing about the intent of the parties as to the meaning of their contract. The record is devoid of any suggestion that Farrel's share of the home sale proceeds would be segregated from, and treated differently than, other funds in the account. The existence of the deposit alone cannot stand as proof that the parties intended a contract different from the terms of their express contract.

The trustee's second argument is based on the 1957 decision of the Illinois Court of Appeals in *Leaf v. McGowan*, 13 Ill.App.2d 58, 141 N.E.2d 67 (1957). Relying on this case, the trustee contends that Illinois law creates only a presumption that each owner of a joint bank account may be treated as the absolute owner of all funds in the account. He asserts that this presumption may be rebutted by proof tracing ownership of funds to a particular account holder.

*Leaf* involved the garnishment of a joint bank account by a judgment creditor to satisfy a debt owed by a judgment debtor who was one of two owners of the account. *Id.* at 68. When the second owner of the account protested that all funds in the account belonged to him, *id.*, the court allowed extrinsic evidence of his ownership to be admitted in an attempt, albeit unsuccessful, to refute the *prima facie* case for the judgment creditor that all the money in the account belonged to the judgment debtor. *Id.* at 70–71.

■ The Court notes initially that *Leaf v. McGowan* did not concern the interpretation of a contractual relationship between a bank and its depositors but instead focused on the rights of a judgment creditor, a party who was a stranger to the contract establishing the joint account.[7] Moreover, the court in *Leaf* based its decision primarily on a 1955 decision of the Illinois Supreme Court, *In re Estate of Schneider*, 6 Ill.2d 180, 127 N.E.2d 445 (1955), in which parol evidence was admit-

---

**6.** The trustee also quotes a provision establishing a joint NOW account from the decision of the Illinois Court of Appeals in *Selby v. DuQuoin State Bank*, 223 Ill.App.3d 104, 165 Ill.Dec. 621, 584 N.E.2d 1055, 1056 (1991). In *Selby*, the court allowed setoff of an entire joint account in satisfaction of the debt of only one joint account holder. Seemingly, the trustee recites this provision for purposes of comparison with the contractual language of the instant case. However, he provides no analysis whatsoever on this point. The Court's review of the provision reveals differences in verbiage from the instant contractual language but no appreciable difference in meaning.

**7.** In this action brought by the trustee arising from contractual rights of the debtors, the trustee stands in the shoes of the debtors as depositors. *See, e.g.,* 3 *Collier on Bankruptcy* ¶ 323.03[2], at 323–8 to 323–9 (15th ed. rev. 2001).

ted to prove ownership of funds in a joint bank account in a dispute between the estate of a deceased account holder and the surviving account holder. The *Schneider* court took care to clarify that its decision hinged on the rights of the depositors as between themselves. *Id.* at 447. In contrast, the court noted, a dispute between a bank and its joint depositors would be governed by their contractual relationship. *Id.* Accordingly, neither *Leaf* nor *Schneider* is on all fours with the facts of the instant case.

The applicability of *Leaf* and *Schneider* to the case at hand is called into further question by *Fisher v. State Bank of Annawan*, 163 Ill.2d 177, 205 Ill.Dec. 520, 643 N.E.2d 811 (1994), a decidedly more recent decision of the Illinois Supreme Court. The Court finds that *Fisher* is dispositive of the issue before it.

In *Fisher*, the defendant bank set off certificates of deposit held jointly by a father and his two sons in order to recover on personal loan obligations owed the bank by one of the sons. The father challenged the setoff as a conversion of his funds based, in part, on the argument that the money in the certificates of deposit belonged only to him and was under his exclusive control. *Id.* at 814. The Illinois Supreme Court, however, found extrinsic evidence of ownership irrelevant since there was a contractual basis for the setoff. *Id.* at 813–14. Because the certificates of deposit provided that the bank could treat each depositor as the absolute owner and that each depositor was the agent of the others for all purposes relating to the certificates of deposit, any one depositor could

grant the bank the right of setoff against the certificates of deposit. *Id.* at 813. When one of the sons did so by executing loan documents authorizing the setoff,[8] the father's claim of sovereignty over the certificates of deposit was of no avail. The contract between the depositors and the bank controlled. *Id.* at 813–14. *See also Suburban Bank of Hoffman–Schaumburg v. Bousis*, 144 Ill.2d 51, 161 Ill.Dec. 289, 578 N.E.2d 935, 941 (1991) ("[a] bank-depositor . . . relationship arises from and is regulated by contract, rather than by the ownership of the funds"); *Pescetto v. Colonial Trust & Sav. Bank*, 111 Ill.2d 314, 95 Ill.Dec. 501, 489 N.E.2d 1365 (1986) (surviving wife's interest in joint bank account could not be protected from deceased husband's pledge of account to bank during his lifetime as security for his loans since contract between bank and depositors controlled and permitted husband to unilaterally pledge the interests of all joint depositors).

The principles of *Fisher* govern the case at hand. When Farrel and Barbara deposited the home sale proceeds into the joint account, the bank became contractually entitled to exercise its right of setoff against all the funds. Extrinsic evidence of Farrel's ownership of half of the sale proceeds was of no bearing.

For the reasons stated, the Court finds that UPB's setoff of the sum of $14,852.18 was permissible under the parties' contract and finds against the trustee and in favor of UPB on the trustee's complaint to recover the sum of $7,426.09 from UPB,

---

**8.** The court found the setoff proper even though the certificates of deposit themselves did not provide the right of setoff. It was sufficient that the son's loan agreements granted setoff authority to the bank and that the certificates of deposit permitted the bank to treat any of the joint owners as the absolute owner of, and agent for, the certificate of deposit accounts. *Id.* at 814. In the instant case, UPB's position is reinforced further because, in addition to the Guaranty granting setoff authority to the bank, the account Agreement itself provided for a right of setoff.

representing Farrel's share of the set off funds.